RETAIL, WHOLESALE AND DEPART-
MENT STORE UNION, LOCAL 390,
Plaintiff–Appellant,

v.

The KROGER COMPANY,
Defendant–Appellee,

Teamsters Local 661, International
Brotherhood of Teamsters, Chauffeurs
and Warehousemen of America, Inter-
venor–Appellee.

No. 90–3359.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1991.

Decided March 6, 1991.

Peter M. Fox and Thomas J. Kircher (argued), Kircher & Phalen, Cincinnati, Ohio, for plaintiff-appellant.

Jonathan M. Norman (argued), Vorys, Sater, Seymour & Pease, Cincinnati, Ohio, for defendant-appellee.

Robert I. Doggett (argued), Cincinnati, Ohio, for intervenor-appellee.

Before MILBURN and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff-appellant Retail, Wholesale and Department Store Union, Local 390 ("Retail Union") appeals the summary judgment granted by the district court denying enforcement of an arbitration award against defendant-appellee The Kroger Company ("Kroger") and ordering tripartite arbitration before a new arbitrator between Retail Union, Kroger and intervenor-appellee Teamsters Local 661, International Brotherhood of Teamsters, Chauffeurs and Warehousemen of America ("Teamsters Local 661"). The action was filed under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. For the reasons that follow, we affirm.

## I.

This action involves two conflicting arbitration awards, one rendered in favor of Retail Union under its bargaining agreement with Kroger, and the other rendered in favor of Teamsters Local 661 under its bargaining agreement with Kroger. Each award purports to give the respective bargaining agent the exclusive right under its bargaining agreement to furnish employees to Kroger for a facility at 800 East Kemper Road in Springdale, Ohio.

Plaintiff Retail Union represents certain Kroger employees in the Cincinnati, Ohio, area, and Teamsters Local 661 represents another group of Kroger employees in the same area. Kroger has maintained bargaining relations with both of the unions, on behalf of their respective memberships, for a number of years. Kroger's facility at 800 E. Kemper Road was a manufacturing plant employing members of the Retail Union until closed in 1983.

In October 1984, Kroger began using the Kemper Road facility as a warehouse, employing members of Teamsters Local 661. Kroger's position was that its contract with Teamsters Local 661 covered warehouse employees whereas the contract with Retail Union covered production employees. Since the work being done at the Kemper Road facility was primarily warehousing, Kroger reasoned that the work should be assigned to Teamsters Local 661 as a natural overflow of work at the nearby Woodlawn, Ohio, retail store warehouse.

Retail Union filed grievances under its collective bargaining agreement claiming that the work should be given to its members. The grievances proceeded to an arbitration hearing before arbitrator Theodore High on April 2, 1986. It is undisputed that Teamsters Local 661 was not a party to the arbitration between Kroger and Retail Union.

Arbitrator High reviewed both collective bargaining agreements and concluded that the parties intended that representation be defined by geographic location rather than company division and, further, that the parties intended that Retail Union perform the work at the Kemper Road facility. Accordingly, arbitrator High ordered Kroger to "cease and desist assigning warehouse and shipping work at its 800 East Kemper Road, Springdale, Ohio facility to employees other than those represented by ... [Retail Union]." The arbitrator also ordered Kroger to award all future work to Retail Union employees and to make members of the Retail Union whole for any losses incurred.

Even though Kroger did not comply with the arbitration award in favor of Retail Union, on August 5, 1986, an official of Teamsters Local 661 wrote Kroger to inform: "It is my understanding that due to a dispute between The Kroger Company and [Retail Union], certain job duties are planned to be transferred from members of Teamsters Local 661 to members of Teamsters Local 661 to members of [Retail Union].... This letter may be considered as a grievance should there be need to proceed further." J.A. 43. The matter proceeded to arbitration; however, Kroger's position before the arbitrator was that the work was properly assigned to the Teamsters. On November 16, 1987, after reviewing Kroger's bargaining agreements with both unions, arbitrator Edwin Render concluded that the parties' intent was that company divisions, rather than geographic location, control and that the work had been properly assigned to Teamsters Local 661. Retail Union was invited to partic-

ipate in the proceedings before arbitrator Render but declined.

Meanwhile, on October 22, 1986, Retail Union filed a complaint in the district court demanding enforcement of its arbitration award. On March 18, 1987, Teamsters Local 661 filed a motion to intervene which the district court granted on July 10, 1987. The district court later allowed Teamsters Local 661 to file a counterclaim demanding enforcement of arbitrator Render's award in favor of Teamsters Local 661.

Both unions filed motions for summary judgment on March 1, 1988. On March 21, 1988, defendant Kroger filed a motion for summary judgment asking that the court refuse to enforce either of the two conflicting arbitration awards and alternatively proposing that the court submit the matter to tripartite arbitration. On March 5, 1990, the district court entered summary judgment ordering the parties to participate in a tripartite arbitration proceeding before a new arbitrator. Retail Union filed this timely appeal.

The principal issues presented for review are (1) whether the district court was precluded from considering the existence of conflicting arbitration awards as a basis for its ruling where the employer failed to file a timely action to vacate the arbitration award in favor of Retail Union, and (2) whether the district court erred in ordering tripartite arbitration between an employer and two separate unions to settle a dispute concerning which union had the right to furnish employees for a work-site where each union had obtained an award in bipartite arbitration purporting to give it exclusive jurisdiction over that worksite.

## II.

### A.

Because of the unique nature of the issues presented in this appeal, an extended discussion of the standard of review will not be helpful. Suffice it to say that questions of law are subject to de novo review, *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989), and that the courts which have examined the propriety of tripartite arbitration have treated the issue as a question of law. *See, e.g., United Indus. Workers v. Kroger Co.*, 900 F.2d 944 (6th Cir.1990); *United States Postal Serv. v. American Postal Workers Union*, 893 F.2d 1117 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 42 (1990).

### B.

Plaintiff Retail Union's position is essentially that it won the race to an arbitration award, and having won the race, it was entitled to enforcement of its arbitration award since that award drew its essence from the collective bargaining agreement. It further argues that the other parties in this action should be penalized for failing to prevent the issuance of conflicting arbitration awards, and, in fact, promoting the possibility of conflicting arbitration awards. Plaintiff's position is an oversimplification of the case and ignores the serious problems presented to the district court by conflicting demands for enforcement of conflicting arbitration awards.

Retail Union's first argument is that no timely action was filed to set aside arbitrator High's award on the basis of a conflicting arbitration award, and, therefore, a conflicting award cannot form the basis for refusing to enforce the first award. *See Occidental Chem. Corp. v. International Chem. Workers Union*, 853 F.2d 1310, 1317 (6th Cir.1988) ("'[O]bjections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired.")

Kroger asserts that this argument has been waived because "[a]bsolutely no mention was made by [Retail Union] at the lower court level of the argument it now makes that Kroger and Teamsters Local 661 were barred from raising defenses to the enforceability of the arbitration award due to their failure to affirmatively move to vacate such an award." Appellee Kroger's Brief at 22. We have held that even in the context of arbitration, failure to raise a limitations defense in a timely man-

ner before the district court results in a waiver of the defense. *International Bhd. of Boilermakers—Local 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1396 n. 3 (6th Cir.1989) (defendant in action to compel arbitration waived statute of limitations defense by failing to raise it in a timely manner before the district court).

■ Moreover, assuming *arguendo* that there was no waiver by Retail Union, and that Kroger could not raise the conflicting award as a defense to enforcement, the district court had before it the counterclaim of Teamsters Local 661, a party not bound by the first arbitration award. *See Transportation–Communication Employees Union v. Union Pacific R.R.*, 385 U.S. 157, 164, 87 S.Ct. 369, 373, 17 L.Ed.2d 264 (1966). This counterclaim squarely placed before the district court the problem of conflicting arbitration awards. Retail Union does not now argue that it was error for the district court to allow Teamsters Local 661 to file its counterclaim. Thus, we cannot accept Retail Union's argument that the district court should not have considered or relied on the existence of a conflicting award.

■ We find a similar weakness in Retail Union's final argument; *viz.*, that the district court was bound to enforce its arbitration award because the award drew its essence from the collective bargaining agreement. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (stating standard by which district court is to review an arbitrator's decision); *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1141 (6th Cir. 1990) (same). The district court had before it a conflicting request to enforce an award to which it was bound to apply the same standard. In fact, the district court stated that "both awards stand or fall on the same legal principles and neither suffers from any defects not equally existent in the other." Given the very limited scope of review, *see Lattimer–Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir.1990), the district court was faced with the dilemma of two awards, each of which drew its essence from the collective bargaining agreement. Thus, Retail Union's argument begs the question of whether a district court may order tripartite arbitration when faced with demands to enforce conflicting arbitration awards.

■ The closest case we have decided to the particular issue at hand is *United Industrial Workers v. Kroger Co.*, 900 F.2d 944 (6th Cir.1990). In that case as in this case, Kroger had collective bargaining agreements with two separate unions—the United Industrial Workers ("UIW") and United Food and Commercial Workers ("UFCW"). When a dispute arose over which union had the right to provide workers at a large refrigerated warehouse, UIW filed a grievance which triggered arbitration. Without filing a formal grievance against UFCW, Kroger invited UFCW to join voluntarily in the pending Kroger/UIW arbitration. When UFCW refused to join the arbitration, Kroger refused to participate in the arbitration of UIW's grievance. UIW then filed an action in federal district court to compel arbitration, and Kroger interpled UFCW hoping to compel tripartite arbitration. The district court granted summary judgment in favor of UIW and dismissed the complaint against UFCW, declining to order tripartite arbitration. *United Industrial*, 900 F.2d at 945.

We held that the mere possibility of exposure to inconsistent liabilities did not abrogate Kroger's duty to arbitrate and agreed with the district court that the UFCW could not be compelled to join in tripartite arbitration. *Id.* at 946. In reaching that conclusion, we held that

[b]efore tripartite arbitration may be ordered, the parties involved first must have a duty to engage in separate bipartite arbitration over the subject matter involved. As the Ninth Circuit pointed out in *United States Postal Service v. American Postal Workers Union*:

For the district court to have the power to compel tripartite arbitration, a contractual nexus is required to both

(a) the parties and (b) the subject matter.

*United Industrial,* 900 F.2d at 947.

Thus, we recognized the power to order tripartite arbitration but found the "contractual nexus" lacking because Kroger's mere request to the UFCW to submit to tripartite arbitration did not constitute a grievance. *Id.* UFCW, having no duty to participate in bipartite arbitration, could not be compelled to tripartite arbitration.

Another matter we perceived as a significant problem in *United Industrial* was "the potential for conflict between different collective bargaining agreements in the choice of arbitrators." 900 F.2d at 947. Kroger sought to compel UFCW to participate before an arbitrator "already chosen in the pending Kroger/UIW arbitration." *Id.* at 948. Since UFCW indicated at oral arguments that the arbitrator already chosen by Kroger and UIW was unacceptable, and since UFCW's contract clearly gave it rights in the selection of an arbitrator, we found "[t]he problem of a conflicting choice of arbitrators [to be] more than theoretical." *Id.* We then concluded:

> [O]ur power does not extend to forcing parties into types of arbitration that contradict their collective bargaining agreement. Accordingly, we refuse to compel the UFCW to engage in tripartite arbitration with the arbitrator chosen by Kroger and the UIW.

*Id.*

Retail Union implies that because Kroger refused to honor the first arbitration award, and because Kroger's position in the second arbitration proceeding was that Teamsters Local 661 had the better claim to the work, this case is like *United Industrial* in that there was not an arbitrable grievance between Kroger and Teamsters Local 661. We disagree.

It is clear that with certain exceptions not applicable here the question of whether an arbitrable grievance has been filed is a question of law for the court. *United Industrial,* 900 F.2d at 947 (citing *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Arbitrability must be determined "on the basis of the contract entered into by the parties." *AT & T Technologies, Inc.,* 475 U.S. at 649, 106 S.Ct. at 1419. The dispositive question is "whether a collective bargaining agreement creates a duty for the parties to arbitrate." *Id.* A matter is presumed arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Communications Workers v. Michigan Bell Tel. Co.,* 820 F.2d 189, 191 (6th Cir.1987) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)).

The agreement between Kroger and Teamsters Local 661 provides for arbitration of "any grievance, dispute or complaint over the interpretation or application of the contents of this Agreement...." J.A. 428. Since it may not be said with positive assurance that the arbitrator's award in favor of Retail Union did not create a "grievance, dispute or complaint over the interpretation or application of the contents of ..." the agreement between Kroger and Teamsters Local 661, we hold that Teamsters Local 661 filed an arbitrable grievance. Consequently, the contractual nexus that was absent in *United Industrial* is present in this case.

Turning to the second concern expressed in *United Industrial,* we see some "potential for conflict between different collective bargaining agreements in the choice of arbitrators." 900 F.2d at 947. However, the potential is significantly less in this case than it was in *United Industrial.*

In this case as in *United Industrial,* the respective collective bargaining agreements give the respective unions the right to participate in the selection of an arbitrator. However, unlike *United Industrial,* the district court in this case ordered arbitration before a third arbitrator. It is true that the respective collective bargaining agreements in this case do not explicitly spell out the procedure for selection of an arbitrator in the case of tripartite arbitration. Thus, there must necessarily be some cooperation between the parties in order to

comply with the district court's order. However, Retail Union, unlike UFCW in *United Industrial,* is not being forced to submit its case to an arbitrator which it had no hand in choosing.

In opposition to the approach taken by the district court, Retail Union argues that the district court should have chosen the approach taken by the Ninth Circuit in *Louisiana–Pacific Corp. v. International Bhd. of Elec. Workers,* 600 F.2d 219 (9th Cir.1979). That case, like the one before this court, involved a jurisdictional dispute between competing unions, and the Ninth Circuit chose to affirm the district court's order granting enforcement of both arbitration awards even though the awards were based on conflicting resolutions of the disputes. Recognizing that tripartite arbitration was a desirable approach, the Ninth Circuit was more persuaded by the "firm federal policy on the finality of a labor arbitrator's decision." *Louisiana–Pacific,* 600 F.2d at 223.

Although we agree that there is a "firm federal policy" in favor of according finality to an arbitrator's award that draws its essence from the collective bargaining agreement, *see United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987), we do not agree that this policy is served by blindly ordering enforcement of conflicting arbitration awards rendered in separate proceedings, neither of which had the ability to bind all interested parties. One of the reasons we hesitate to follow *Louisiana–Pacific* has to do with its reasons for rejecting *Transportation–Communication Employees Union v. Union Pacific Railroad,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), as controlling authority.

In *Union Pacific* two separate unions representing distinct groups of employees each claimed the right to new jobs created by automation. 385 U.S. at 159, 87 S.Ct. at 370–71. One union processed a grievance to arbitration before the Railway Adjustment Board (an agency which Congress had granted exclusive jurisdiction to hear railroad work disputes), and the second union refused to participate in the arbitration.

The Board ruled in favor of the union that processed the grievance. In a subsequent action for enforcement, the district court held that the second union was an indispensable party and refused enforcement. *Id.* at 159, 87 S.Ct. at 370–71.

The Supreme Court affirmed the district court's dismissal and ordered the case remanded to the Board for tripartite arbitration. *Id.* In regard to the need for finality, the Court recognized that the Board was created for the purpose of providing "for the prompt and orderly settlement of all disputes ..."; however, the Court found that this purpose was not served by the "merry-go-round" procedure of separate orders in favor of each union, neither of which prejudiced the rights of the other union. *Id.* at 162, 87 S.Ct. at 372 (emphasis in original).

The Ninth Circuit reasoned that *Union Pacific* had "no application" to the case before the court because the rights and obligations (concerning arbitration) of the parties before the Ninth Circuit did not arise out of a statute as in *Union Pacific,* but out of collective bargaining agreements. *Louisiana–Pacific,* 600 F.2d at 224. The obvious thrust of this distinction is that a party should not be compelled to submit to tripartite arbitration unless he has expressly assumed that obligation in his contract. However, the Ninth Circuit did not remain true to the distinction that it drew because later, in the same opinion, the court recognized that the employer could have forced tripartite arbitration, even though the parties had not agreed to tripartite arbitration in their collective bargaining agreements, had the employer acted before the arbitrators rendered separate awards. *Id.* at 226; *see Postal Service,* 893 F.2d at 1121. Moreover, even if the Ninth Circuit's distinction is recognized, *Union Pacific* convinces us that the policy of finality with its purpose of achieving a quick and final resolution is not served by separate bipartite awards, neither of which binds all parties concerned.

Another reason for our declining to follow *Louisiana–Pacific* lies in a difference in the remedy awarded and enforced in that

case. In *Louisiana–Pacific*, the arbitration awards ordered the employer to pay money to two groups of employees. 600 F.2d at 220. In this case Kroger was ordered by each arbitrator to employ one group of employees to the exclusion of the other. Thus, the employer could have complied with the conflicting awards in *Louisiana–Pacific*, whereas in this case compliance with both awards would be impossible.

The district court found authority for ordering tripartite arbitration in *Local No. 850, International Association of Machinists v. T.I.M.E.–D.C., Inc.* 705 F.2d 1275, 1277 (10th Cir.1983); *see Textile Workers Union v. Scottex Corp.*, 344 F.Supp. 243 (S.D.N.Y.1972); *see also United States Postal Serv. v. American Postal Workers Union*, 893 F.2d 1117, 1121 (9th Cir.) ("In light of the trend in federal common law toward compelling tripartite arbitration ... we conclude that the district court did not err in ordering ... tripartite arbitration."), *cert. denied*, — U.S. —, 111 S.Ct. 67, 112 L.Ed.2d 42 (1990); *CBS v. American Recording & Broadcasting Ass'n*, 414 F.2d 1326, 1328–29 (2d Cir.1969) (following *Union Pacific RR*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), to uphold order of tripartite arbitration). In T.I.M.E.–D.C. the Tenth Circuit affirmed an order of the district court for tripartite arbitration under the following facts which are essentially indistinguishable from the facts in this case:

> [T]wo directly conflicting arbitration awards have been issued requiring defendant T.I.M.E.–D.C. to assign the ... work in question herein to both of the Union parties to this litigation. The first arbitration award ... required the assignment of this work to the Teamster employees in T.I.M.E.–D.C.'s Oklahoma City, Oklahoma city pickup and delivery unit ... [S]ome seventeen months later, the second arbitration award ... required the assignment of this work to the Machinist employees in T.I.M.E.–D.C.'s Oklahoma City, Oklahoma shop unit. This placed T.I.M.E.–D.C. in the impossible position of having to comply with both awards coextensively.

705 F.2d at 1276 (quoting from district court's memorandum).

The Tenth Circuit was not convinced that the winner of the race to arbitration should automatically prevail and recognized that tripartite arbitration would allow "due consideration ... [of] the collective bargaining agreement, agreements other than and in addition to the collective bargaining agreement and the custom and practice in the trade." *T.I.M.E.–D.C.*, 705 F.2d at 1277 (citing *Local 416, Sheet Metal Workers Int'l Ass'n v. Helgesteel Corp.*, 507 F.2d 1053 (7th Cir.1974)); *see also Union Pacific*, 385 U.S. at 161, 87 S.Ct. at 371–72. Further, the Tenth Circuit was persuaded that arbitration is a favored method of settling jurisdictional disputes between unions. *Id.* (citing *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964)).

The United States Supreme Court has recognized that

> [t]he Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). By choosing the course that it did, the district court acted in accord with the policy favoring arbitration of jurisdictional disputes. It also found a remedy which cured the inherent weakness of the bipartite awards—the inability to bind non-parties to the agreement. *See Union Pacific*, 385 U.S. at 164, 87 S.Ct. at 373; *Local #11, Int'l Bhd. of Elec. Workers v. Jandon Elec. Co.*, 429 F.2d 584 (9th Cir.1970). The district court's approach not only was consistent with *Union Pacific*, but also was a "practicable, economical, convenient and fair" way of coping with the inconsistent awards. *Postal Service*,

893 F.2d at 1121. Thus, we hold that under these circumstances, the district court appropriately ordered tripartite arbitration.

### III.

Accordingly, the judgment of the district court is AFFIRMED.