958 F.2d 371
 142 L.R.R.M. (BNA) 2648
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FREEMAN CONSTRUCTION COMPANY, Plaintiff-Appellant,
v.
STRUCTURAL IRON WORKERS' LOCAL NO. 17, Defendant-Appellee.
 No. 91-3455.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1992.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Freeman Construction Company ("Freeman"), sought below a declaratory judgment that it was not party to a collective bargaining agreement with the defendant-appellee, Structural Iron Workers' Local No. 17 ("Local 17"). On appeal, Freeman charges the district court with error in granting the defendant-appellee's summary judgment motion. We affirm the district court's order.
 
 I.
 
 2
 The facts of this case began in the fall of 1986, when Freeman, working as a general contractor for the city of Akron, Ohio on the "Walkway Construction Project," subcontracted iron work to a non-union subcontractor, Natural Lite, Inc. ("Natural Lite"). Local 17 believed this to be a breach of the 1985-88 collective bargaining agreement between Local 17 and an employers' association in which Freeman was said to be a participant, the Steel and Iron Contractors' Association ("Association").[1] In 1982, Harry B. Johnson, a former president of Freeman, apparently signed a document entitled "Assent to Participate and Acceptance of Local No. 17 Agreement" ("Assent Agreement"), which purported to be a contract binding Freeman to the conditions of the 1982-85 collective bargaining agreement, as well as to any subsequent collective bargaining agreements between Local 17 and the Association. See Suppl. J.A. at 62-63 (establishing that Johnson signed the document and that it had to have been signed before his July 1982 resignation). But see J.A. at 39 (copy of the document itself bearing a May 1983 date). The collective bargaining agreement in force in the fall of 1986 provided in Article XXIV that Association members would not subcontract to non-union subcontractors. Therefore, believing Freeman to be in breach of contract for subcontracting with Natural Lite, Local 17 proceeded to bring its grievance before a joint grievance committee for arbitration, pursuant to Article XXII of the collective bargaining agreement.
 
 
 3
 On May 22, 1987, a joint grievance committee, consisting of representatives of both the union and the Association, held a hearing on Local 17's grievance. Freeman appeared under protest, arguing that the committee had no jurisdiction over the claim on the grounds that Freeman was neither a member of the Association nor a signatory to any collective bargaining agreement with Local 17, and therefore, had not agreed to arbitrate any dispute with Local 17. On the same day, the committee issued its decision. It determined that Freeman was a party to the collective bargaining agreement in effect in 1986, having signed the Assent Agreement in 1982 by its agent, Harry B. Johnson. The committee found that, had Freeman wished not to participate in the 1985-88 collective bargaining agreement, it could have withdrawn only in the manner described in the Assent Agreement--by giving written notice thirty days prior to the termination of the 1982-85 collective bargaining agreement. Finally, the committee decided that Freeman was in violation of the collective bargaining agreement and ordered Freeman to negotiate a settlement with Local 17 in an amount not to exceed $61,632.00, the amount claimed by Local 17 in lost wages and pension benefits.
 
 
 4
 After receiving notice of this decision, Freeman refused to negotiate a settlement with Local 17. It did not respond when Local 17 made an offer of $40,000.00. On August 4, 1987, Local 17 advised the committee of this state of affairs, asking that the committee reconvene to determine money damages. Instead, the committee issued a decision by letter dated August 20, 1987, granting judgment against Freeman in the amount of $40,000.00.
 
 
 5
 Freeman commenced this action on July 22, 1987 by filing with the district court an application to vacate the arbitration award, pursuant to 9 U.S.C. § 10 (1988) (amended 1990). Freeman also sought a declaratory judgment, pursuant to 28 U.S.C. §§ 1331, 2201, 2202 (1988), that it was not a party to any collective bargaining agreement with Local 17. Local 17 filed a timely answer and counterclaimed for enforcement of the award. On December 17, 1987, Local 17 filed a motion for summary judgment. The district court granted Local 17's motion and denied Freeman's application to vacate the award in an April 17, 1991 order. On May 14, 1991, Freeman filed a notice of appeal from the district court's decision.
 
 II.
 
 6
 The first issue before us is whether the district court erred in not reviewing de novo the arbitrability of the conflict. Freeman argues that the district court improperly deferred to the joint grievance committee's determination that Freeman was a signatory to a collective bargaining agreement with Local 17 in 1986, pointing out that Supreme Court precedent has established that the question of arbitrability is an issue for the court to decide, rather than the arbitrator.
 
 
 7
 Freeman is correct in its interpretation of the law of the cases it cites; however, it incorrectly applies those cases to its own. The Supreme Court, in AT & T Technologies v. Communication Workers of America, 475 U.S. 643 (1986), held that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id. at 649; cf. Vic Wertz Distrib. Co. v. Teamsters Local 1038, 898 F.2d 1136, 1140 (6th Cir.1990) (holding that the AT & T general rule does not apply where parties "clearly and unmistakably provide otherwise," and in such cases the arbitrator may decide arbitrability). As Local 17 contends, however, Freeman does not in fact contest whether the underlying issue is arbitrable under the collective bargaining agreement, but rather, whether it is bound by the collective bargaining agreement at all. That question is an issue of contract law. Accordingly, the decision of the committee that Freeman was bound is reviewable by the district court under the deferential standard that applies to its review of all arbitration decisions. That standard, which will be set out and applied to this case, infra, is a very deferential one, which the district court properly applied in declining to review the arbitrability question de novo.
 
 
 8
 Moreover, even if Local 17 were incorrect in characterizing Freeman's argument as one of contract law, under this court's decision in Vic Wertz Distributing, the district court still should have reviewed the arbitrability question under a deferential standard. 898 F.2d at 1140. In Vic Wertz, the court noted that the proper time for the district court to determine the arbitrability of an issue is before it has been arbitrated; the question should be raised by an action to compel or enjoin arbitration. Id. Thus, as in this case, where the parties submit the issue of arbitrability to the arbitrator, without initially bringing it before the district court, agreement to have the arbitrator decide it can be implied. Id. We note that Freeman stated in its opening remarks at the arbitration hearing that it had serious questions as to whether the committee had jurisdiction over the proceeding, emphasizing that it did not wish to waive that issue. Nonetheless, by choosing to act in that forum first, Freeman sealed its fate.[2] Again, the district court's deferential review was not error.
 
 III.
 
 9
 The second issue we review is whether the district court erred in granting summary judgment in favor of Local 17. A decision to grant summary judgment is a conclusion of law and, as such, is reviewed by this court de novo, Pinney Dock & Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988), viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party, 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). Summary judgment is not appropriately granted where there is any genuine issue of material fact. Vic Wertz Distrib. Co. v. Teamsters Local 1038, 898 F.2d 1136, 1138-39 (6th Cir.1990).
 
 
 10
 "The standard of review in arbitration cases is narrow. Indeed, an arbitrator's decision should be upheld unless it fails to 'draw its essence from the collective bargaining agreement." Eberhard Foods, Inc. v. Handy, 868 F.2d 890, 891 (6th Cir.1989) (citation omitted) (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). The law of this circuit holds that an award fails to meet the "essence" test when
 
 
 11
 (1) an award conflicts with the express terms of the collective bargaining agreement; (2) an award imposes additional requirements that are not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.
 
 
 12
 Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, 793 F.2d 759, 766 (6th Cir.1986). We must measure the arbitrator's decision to find Freeman in violation of the collective bargaining agreement, and the subsequent award of $40,000 damages, by this standard. Our decision is based upon the following observations.
 
 
 13
 First, the collective bargaining agreement clearly states in Article I that the agreement "covers all field erection and construction work traditionally performed by ... the [International] Association [of Bridge, Structural and Ornamental Iron Workers]." J.A. at 9. Fifty percent of the project, building an enclosed walkway, involved work that was traditionally ironworkers' work.
 
 
 14
 Second, the agreement states in Article XXIV that "any portion of the work covered by this contract to be done at a jobsite shall be done either by [the Employer's] own forces ..., or by subcontractors who have signed agreements with [Local 17]." J.A. at 19. It is undisputed that Natural Lite, the subcontractor Freeman hired, had not signed any agreement with Local 17.
 
 
 15
 Third, the bargaining agreement states that its purpose is, in part, "to provide for labor's continuous employment to be in accordance with the conditions herein set forth and at wages herein agreed upon." J.A. at 9. Local 17 had an authority from its pension fund testify as to the damages suffered by the union and its members. The pension authority testified that, since iron work constituted 50% of the work of the project, he calculated the lost wages and the lost contributions to the pension fund by adding up the total hours of work on the project and dividing them in half. The figure he arrived at was $61,632.00.
 
 
 16
 Finally, the agreement states in Article XXII that the joint grievance committee must consider "any dispute or disagreement [which] arise[s] between the parties hereto under the operation of this Agreement" and that the committee will decide upon a resolution of the dispute by majority vote. J.A. at 19. Nothing limits the committee's authority to fashion a remedy, besides the other provisions of the bargaining agreement. We have not discovered any provision which would prevent the committee from ordering the parties to negotiate a settlement, or from basing its final award on the good faith offer of one of the parties.[3]
 
 
 17
 After considering these facts, we conclude that the award did draw its essence from the collective bargaining agreement. Nothing in the award is in conflict with the agreement, outside the agreement, or irrational under the terms of the agreement.
 
 IV.
 
 18
 For the foregoing reasons, the district court's order granting Local 17's motion for summary judgment is AFFIRMED.
 
 
 
 [1]
 Another employers' association, Construction Employers' Association of Cleveland, was also a party to the agreement, but is not otherwise involved in this case
 
 
 [2]
 Freeman claims that it appeared before the committee only to have its side of the story heard, believing that the hearing would have proceeded with or without its appearance. We reiterate that the appropriate action for Freeman would have been to bring an action to enjoin the arbitration
 
 
 [3]
 Freeman argues that the joint grievance committee's decision to award Local 17 $40,000. in damages without holding another hearing on the damages issue constituted "misbehavior" on the part of the committee, or an act in excess of its powers, in violation of 9 U.S.C. § 10 (1988) (amended 1990). Freeman further contends that by not holding such a hearing, the committee violated his due process rights. Because Freeman had full opportunity to produce evidence on the issue of damages at the original hearing, we hold that these arguments are without merit