66 F.3d 325
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 369,
Plaintiff-Appellant,
v.
OFFICE & PROFESSIONAL EMPLOYEES UNION, LOCAL 367, Defendant-Appellee.
 No. 94-5786.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1995.
 
 Before: JONES and BOGGS, Circuit Judges; and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Local 369 of the International Union of Operating Engineers ("the Engineers' Union") appeals the district court's grant of summary judgment for the defendant, Local 367 of the Office & Professional Employees Union ("the Office Employees' Union"), and the court's subsequent dismissal of the case. The Engineers' Union had filed suit in district court to vacate an arbitration award, arguing that the arbitrator had exceeded the scope of his authority and that the parties' collective bargaining agreement violated public policy. The Engineers' Union timely appeals, and we affirm the decision of the district court, enforcing the award.
 
 
 2
 * In 1973, Pamela Hargis began working as a secretary at the Nashville office of the Engineers' Union. Hargis joined the Office Employees' Union in 1984 and remained a member until 1989; she was also a member of the Engineers' Union for most of her employment.
 
 
 3
 Hargis was laid off in October 1990, shortly after Robert P. Richardson took over as business manager of the Engineers' Union. When Hargis found out that another employee had been hired in her position, she filed a grievance under the collective bargaining agreement between the Engineers' Union and the Office Employees' Union. At the time she filed the grievance, Hargis was a member of the Engineers' Union, but not the Office Employees' Union.[1] Richardson justified Hargis's layoff by claiming that she was not a clerical employee, but instead a business agent, a position not covered by the collective bargaining agreement. Richardson claimed that as business manager he therefore possessed sole discretion to fire a business agent.
 
 
 4
 The parties disputed whether Hargis's grievance was arbitrable under the contract, and they agreed to submit the question to an arbitrator. Robert Shields was selected, and after a hearing on February 24, 1993, he ruled that Hargis's grievance was arbitrable. Exactly three months later, the Engineers' Union filed suit in the Western District of Tennessee, seeking a declaratory judgment to void the arbitrator's award; the Office Employees' Union counterclaimed to enforce the arbitrator's decision.
 
 II
 
 5
 The dispute centers upon the first article of the collective bargaining agreement between the Engineers' Union and the Office Employees' Union. The parties entered into the agreement in 1970, and it continued pursuant to an "evergreen clause," creating annual renewals unless either party gave notice to terminate or renegotiate.
 
 
 6
 The Engineers' Union first argues that Article I, Section 2, of the collective bargaining agreement violates public policy because, it contends, an employee must be a union member to be covered by the agreement. The arbitrator construed the provision as merely expressing a contingency, consistent with the reservation in Article I, Section 1: "However, if during the life of this agreement [Tennessee] law is changed or declared unconstitutional so as to make legal the inclusion of a Union shop...." The district court agreed, noting that Section 2 is "expressly conditional upon its legality" so that the clause "remains a nullity and does not effect the validity of the agreement as a whole."
 
 
 7
 The Engineers' Union further contends that once Section 2 is excised from the contract on public policy grounds, the collective bargaining agreement lacks a definition of "bargaining unit" and thus is void for indefiniteness (Section 2 defines the bargaining unit as "[a]ll eligible employees of the Employer"). The arbitrator disagreed, noting that another provision of the collective bargaining agreement (Article II, Section 1) implicitly applies to office employees because it states that "in the event of a ... layoff," rehiring would be based on seniority and "said application shall be on an office-wide basis." Additionally, the arbitrator found that the conduct of the parties and the formal and colloquial names of the Unions clearly indicated that secretaries were members of the relevant bargaining unit, as did the Engineers' Union's practice of deducting the dues for the Office Employees' Union from its secretaries' paychecks.
 
 III
 
 8
 The Supreme Court held in United Paperworkers Int'l Union v. Misco, Inc. that federal courts may only enforce an arbitration award that "draws its essence from the collective bargaining agreement" and "are not authorized to reconsider the merits of an arbitration award." 484 U.S. 29, 36 (1987). Such deference reflects the policy favoring settlement and arbitration and echoes federal legislation regulating the labor-management relationship. Id. at 37. Thus, an arbitrator's award is valid so long as it is based on the parties' agreement, rather than being "[an arbitrator's] own brand of industrial justice." Id. at 36, quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "[C]ourts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960) (footnote omitted).
 
 
 9
 An arbitrator is empowered to construe a contractual provision that is ambiguous or unclear in context, and "a federal court may not overrule [his] decision simply because the court believes its own interpretation of the contract would be the better one." Ford Motor Co. v. Plant Protection Ass'n Nat'l, 770 F.2d 69, 74 (6th Cir.1985), quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 764 (1983); see Morgan Servs., Inc. v. Amalgamated Clothing and Textile Workers Union, Local 323, 724 F.2d 1217, 1221 (6th Cir.1984) ("It is well established that the power to construe ambiguous contract provisions lies with the arbitrator....").
 
 
 10
 In construing a labor agreement, the arbitrator may also look for guidance to "the 'practices of the shop' that have developed between the parties in the day-to-day administration of the collective bargaining agreement." Detroit Coil Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge # 82, 594 F.2d 575, 579 (6th Cir.), cert. denied, 444 U.S. 840 (1979). The Supreme Court has endorsed this principle of contract interpretation: "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of the industry and the shop--is equally part of the collective bargaining agreement although not expressed in it." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960).
 
 
 11
 "Case law is equally well settled, however, that where the agreement is ambiguous, all doubts concerning the scope of arbitrability should be resolved in favor of arbitration." International Bhd. of Teamsters, Local No. 783 v. Dean Foods Co., No. 91-6259, 1992 WL 163251, at * 2 (6th Cir.1992). This presumption is especially applicable where the agreement contains a broad arbitration clause, so that "only an express provision excluding a particular grievance or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " United Steelworkers of America v. Mead Corp., Fine Paper Div., 21 F.3d 128, 131 (6th Cir.1994), quoting AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986); see also Communications Workers of Am. v. Michigan Bell Tel. Co., 820 F.2d 189 (1987). The presumption may be applied here because the collective bargaining agreement contains a broad arbitration clause--Article III, entitled "Grievance Procedure," requires arbitration of "[a]ll grievances or differences which may arise between the Employer and any of the employees."
 
 IV
 
 12
 The plaintiff's legal argument that the existence of a "union shop" clause in the collective bargaining agreement violates public policy must fail because, in this case, the contract did not in fact contain a union shop clause. The district court and the arbitrator properly considered the express terms of the agreement, the parties' relationship in fact, and their past conduct, in concluding that the union shop clause in the collective bargaining agreement was conditional and thus not illegal. Article I, Section 1 clearly concerns a hypothetical situation, not a present arrangement: "if .. the law is changed or declared unconstitutional ... the provisions ... below, shall become effective." Further, the Engineers' Union failed to present evidence that either party actually implemented a union shop at any time. Consequently, the finding that Section 1 merely describes a contingency renders the Engineers' Union's public policy argument meritless.
 
 
 13
 Moreover, the parties determined the issue of arbitrability when they submitted the issue to an arbitrator. Arbitrability is generally a question of law to be determined by a court rather than an arbitrator; therefore, a court's review of an arbitrator's decision on arbitrability is de novo. Roney & Company v. Kassab, 981 F.2d 894, 897-99 (6th Cir.1992); Vic Wertz Distributing Co. v. Teamsters Local 1038, 898 F.2d 1136, 1139 (6th Cir.1990). However, where the parties first submit the issue of arbitrability without reservation to an arbitrator rather than a court, we will imply an agreement that the arbitrator's decision is within his authority. Wertz, 898 F.2d at 1140. As another panel of this court has noted:
 
 
 14
 [T]he proper time for the district court to determine the arbitrability of an issue is before it has been arbitrated; the question should be raised in an action to compel or enjoin arbitration.... We note that [appellant] stated in its opening remarks at the arbitration hearing that it had serious questions as to whether the committee had jurisdiction ... Nonetheless, by choosing to act in that forum first, [appellant] sealed his fate. Again, the district court's deferential review was not error.
 
 
 15
 Freeman Constr. Co. v. Structural Iron Workers, Local 17, No. 91-3455, 1992 WL 56751, at * 3 (6th Cir. March 23, 1992).
 
 
 16
 Such logic applies with special force here, where the plaintiff is a labor union, who conceded at oral argument that the view from the other side of the bargaining table altered its perspective. We see no reason to offer every party to an arbitration "two bites at the apple," especially where such a rule would defeat two major purposes of arbitration: the speedy resolution of disputes and the prevention of unnecessary litigation. Neither the district court nor the arbitrator committed clear error, so we will not disturb their conclusions.
 
 
 17
 The arbitrator also rationally concluded that Hargis was covered under the agreement as a secretarial employee of the Engineers' Union, and thus was not terminable at will. The arbitrator, as well as the district court, properly discounted Richardson's testimony characterizing Hargis as a business agent. Several witnesses, including the previous business manager, testified that Hargis's duties were clerical--even Richardson admitted that Hargis in fact performed secretarial and clerical duties. This testimony was confirmed by the union's own records stating that Hargis was a secretary, not a business agent.
 
 V
 
 18
 We AFFIRM the district court's grant of summary judgment for the Office Employees' Union because the arbitration award "dr[ew] its essence from the collective bargaining agreement" and was not the arbitrator's "own brand of industrial justice." Regrettably, this ruling comes almost three years after the arbitrator's award, and decides only that the dispute is suitable for arbitration. Such a lengthy delay due to litigation is the evil that arbitration is intended to avert.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 There apparently were no members of the Office Employees' Union in the Nashville office at that time