CAMPBELL "66" EXPRESS, INC., a corporation, Appellee,

v.

Mack RUNDEL, Richard Roe and John Roe, Individually and as representatives of the class, Quentin R. Rakestraw and Roger J. Lerner, Appellants.

No: 79–1046.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1979.

Decided April 23, 1979.

---

Quentin R. Rakestraw, pro se.

Roger J. Lerner, pro se.

H. Kent Munson, St. Louis, Mo., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON,* District Judge.

PER CURIAM.

Defendant-appellants Roger J. Lerner and Quentin R. Rakestraw appeal from the district court's[1] issuance of a preliminary injunction prohibiting defendants from interfering with the business operations of plaintiff-appellee Campbell "66" Express, Inc., in any manner. We affirm the district court's order.

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

Mack Rundel was employed by Campbell as a truck driver. Rundel was a member of Teamster's Local 600 and thus was subject to the collective bargaining agreement which existed between Campbell and Local 600. On December 13, 1977, Campbell discharged Rundel for failing to complete delivery of freight in the allotted time. Rundel filed and pursued a grievance based on his discharge in accord with the terms of the collective bargaining agreement.[2]

On January 11, 1978, the Missouri-Kansas Joint State Committee unanimously denied Rundel's grievance and upheld the discharge.[3]

On November 13, 1978, defendants Rakestraw and Lerner, several other persons (who are not parties to this appeal), and Rundel (who is also not a party to this appeal) began picketing the truck terminal entrance at the Campbell business location. Appellants contend that the picketing was informational, the purpose of which was to communicate their claim that Campbell forced drivers to exceed the 55 mile per hour speed limit in order to complete deliveries within the allotted time. Appellee contends that the primary purpose of the picketing was to pressure Campbell to rehire Rundel.

The record shows that some trucks did not enter the terminal as a result of the picketing. Campbell thus asked the district court for the preliminary injunction, which was granted.

In applying the Eighth Circuit's standard for the issuance of a preliminary injunction, it is necessary for the district court to determine that plaintiff has made a clear showing of probable success on the merits and possible irreparable injury, or, in the alternative, a showing that there are sufficiently serious questions going to the merits making them a fair ground for litigation and a balance of hardships tipping decidedly toward plaintiff.[4] *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978); *Dakota Wholesale Liquor, Inc. v. Minnesota*, 584 F.2d 847 (8th Cir. 1978); *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973).

The trial court found that plaintiff had established a clear showing of possible irreparable injury should the injunction not be issued. The trial court noted that trucks from various local cartage companies and other interlining shippers turned away from plaintiff's terminal as a result of defendants' picketing. The evidence further reflected that approximately 80,000 pounds of freight were lost as a result of the picketing.

The trial court also found that plaintiff Campbell had made a clear showing of probable success on the merits concerning the issues of whether appellants were agents of Rundel, and whether the picketing was a circumvention and violation of a final and binding arbitration agreement as set out in *Boys Markets, Inc. v. Retail*

---

2. The collective bargaining agreement provides:

ARTICLE 45. Grievance Machinery and Union Liability.
Section 1. General
  The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, of any controversy which might arise.
  Disputes shall first be taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:
  (a) Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be

taken to the Joint Area Committee. Such decision shall be final and binding on both parties.
     \*   \*   \*   \*   \*   \*
  (e) Deadlocked cases may be submitted to umpire handling if a majority of the Joint Area Committee determines to submit such matter to an umpire for decision. Otherwise either party shall be permitted all legal or economic recourse.

3. Rundel also initiated complaints with the National Labor Relations Board concerning his discharge. These were dismissed for lack of evidence.

4. *See Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

*Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

Thus the trial court found that the preliminary injunction standards had been met and consequently granted Campbell's requested temporary relief.

■ Once the district court has determined the preliminary injunction standards have been met, this court's review is limited to whether the district court's issuance of the injunction was an abuse of discretion. *Dakota Wholesale Liquor, Inc. v. Minnesota, supra,* 584 F.2d at 849.

We do not find the trial court to be clearly erroneous in any of its factual findings, nor can we say the court abused its discretion by issuing the preliminary injunction.

■ There is evidence sufficient to support the district court's finding of possible irreparable harm in that the record reflects that some trucks did not cross the picket line; as a result, Campbell suffered a loss of income.

■ There was also evidence sufficient for a preliminary finding that defendants were acting on behalf of or at the behest of Rundel;[5] that the picketing had, as its primary purpose, the object of getting Rundel rehired with back pay;[6] and that the underlying dispute—Rundel's employment ter-

mination—had already been determined pursuant to the collective bargaining agreement and that such decision was "final and binding on both parties." The trial court thus determined that the picketing was probably in circumvention of a final and binding decision made pursuant to the collective bargaining agreement and consequently would probably be enjoinable under the ruling in *Boys Markets, Inc. v. Retail Clerks Union, supra.*

We do not find that the trial court abused its discretion in issuing the preliminary injunction.

The legal issues which appellants raise go to (1) whether there was a final and binding arbitration decision as required by *Boys Markets,* and (2) whether the district court had jurisdiction to enjoin defendants, even if they were acting on behalf of Rundel.

■ The decision by the Joint State Committee unanimously denying Rundel's grievance was final and binding by the terms of the collective bargaining agreement, note 2 *supra,* and by Rundel's signature on the grievance form which contained this statement:

I believe that to the best of my knowledge, the above statement is true. I hereby authorize the Union to settle my complaint as they deem proper, and I

---

5. A relevant portion of Rundel's testimony is as follows:

[Counsel for plaintiff] Q. My question is who called these individuals to come down there to picket on the 13th and 14th of November?

[Rundel] A. When you say all of them, I called some of them and Mr. Russom called some of them.

Q. All right, which ones did you call?

A. I called Claudia Bell and I called, oh, the gentleman who's not here I called. He's not here.

Q. Did you ask Mr. Russom to call some of them also?

A. Yes, sir.

6. A relevant portion of Rundel's testimony is a part of a tape recorded television interview admitted as evidence in the district court:

MARSH: [television reporter] You're seeking reinstatement, obviously, and back pay, all that sort of thing?

RUNDEL: That's correct.

\* \* \* \* \* \*

MARSH: What are you seeking here, Mack, overall? You want your job back, you just want to make them suffer a little bit, what have you got in mind specifically?

RUNDEL: Well, sir, I would like to have my job back, my back pay, and for them to treat people right.

\* \* \* \* \* \*

Further testimony relevant to this finding is that of Bob Williams, Field Safety Supervisor for Campbell:

Q. [Counsel for plaintiff] What did he tell you was the reason for the picket?

A. [Williams] He said that they were there in an attempt to get his job back. He said, "We're going to be here to get my job back," and he said for us to leave, "Of course, the dumb Pollock could call me back to work and pay me my back pay, and," he said, "then there would be no reason for us to be here. If not we're going to stay here until we close the doors down."

agree to accept and be bound by the settlement agreed to by the Union, or decided by any grievance Committee authorized by contract to adjudicate disputes or grievance with my employer.

*Boys Markets* dealt with "the situation in which a collective-bargaining agreement contains a mandatory grievance adjustment or arbitration procedure," *Boys Markets, Inc. v. Retail Clerks Union, supra,* 398 U.S. at 253, 90 S.Ct. at 1594, and this situation arguably falls within that language. Thus, it cannot be said that the district court was incorrect in determining that the grievance procedure probably falls within the scope of *Boys Markets.*

Appellants still argue, however, that the court is without jurisdiction to enjoin them, as even if they are agents of Rundel, Rundel is no longer an employee. Consequently, appellants argue that there was no collective bargaining agreement in effect between Rundel and Campbell and that the court therefore does not have jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

*Boys Markets* specifically allows injunctive relief to enforce mandatory grievance and arbitration procedures, and contrary to appellants' allegations, *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), appears to do nothing to diminish the court's power to provide such relief in this immediate situation.

The Supreme Court distinguished the facts in *Buffalo Forge* from *Boys Markets* on the basis that:

> The issue in this case arises because the employer not only asked for an order directing the Union to arbitrate but

prayed that the strike itself be enjoined pending arbitration and the arbitrator's decision whether the strike was permissible under the no-strike clause. * * * [T]he employer claims that despite the Norris-LaGuardia Act's ban on federal-court injunctions in labor disputes the District Court was empowered to enjoin the strike by § 301 of the Labor Management Relations Act as construed by *Boys Markets v. Retail Clerks Union, supra.* This would undoubtedly have been the case had the strike been precipitated by a dispute between union and management that was subject to binding arbitration under the provisions of the contracts. In *Boys Markets,* * * * [t]he dispute was of the kind subject to the grievance and arbitration clauses contained in the collective-bargaining contract, and it was also clear that the strike violated the no-strike clause accompanying the arbitration provisions. The Court held that the union could be enjoined from striking over a dispute which it was bound to arbitrate at the employer's behest.

*Buffalo Forge Co. v. United Steel Workers, supra* 428 U.S. at 405–06, 96 S.Ct. at 3147.

■■ Here, the trial court found that the underlying primary purpose of the picketing[7] was to get Rundel's job back. Rundel's termination had already been examined and ruled upon in accord with the binding terms of the collective bargaining agreement.[8] Rundel was bound by the collective bargaining agreement and thus subject to the decision made in regard to his termination. He was a member of the union which was a party to the collective bargaining agreement, and admits in the pleadings that, at the time of this lawsuit,

---

**7.** Appellants also contend that there was no breach of the collective bargaining agreement in that there was no "strike, lockout [or] tie-up" as prohibited by Article 45. Note 2 *supra.* The district court found that there was a breach of the collective bargaining agreement in that appellants attempted to circumvent the binding grievance procedure by picketing the company. On the basis of the record before us, we cannot hold that the district court's finding was clearly erroneous.

**8.** Appellants contend that Campbell is required to arbitrate or submit to the terms of the grievance procedure the legality of the picketing. The district court found that the underlying dispute of the picketing involved the discharge of Rundel. This has already been submitted to the grievance procedure. The district court's role is to enforce the final and binding grievance decision. There appears to be no basis for arbitration of the legality of the picketing in this situation.

**130**

he was still a member of the union. The district court had the power to preliminarily enjoin the picketing, if it found that the picketing was in circumvention of the binding grievance procedure by which Rundel had, as had Campbell, agreed to be bound. The purpose of Boys Markets was to "implement the strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties." *Buffalo Forge Co. v. United Steelworkers, supra*, 428 U.S. at 407, 96 S.Ct. at 3147. The preliminary injunction, as used in this case, appears to enhance those values endorsed in *Boys Markets*.

In summary, we note that this is a preliminary injunction which was granted by the trial court upon the basis of possible irreparable harm to Campbell should the injunction not have been issued. A preliminary injunction is not a decision upon the merits of the underlying case. As we stated in *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 697 (8th Cir. 1948):

> It must be borne in mind that the parties did not submit the case to the trial court on its merits.  * * *  The decision of the trial court on granting the motion for preliminary injunction will not estop either of the parties on the trial of the case on its merits, nor would any determination of those questions by this court on appeal be binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy.

Even if appellant's contentions should be proven correct, "it would not follow that the court abused its discretion in granting the preliminary injunction appealed from." *Id.*

We affirm the district court's grant of the preliminary injunction.

Affirmed.