968 F.2d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION
NO. 783, Plaintiff-Appellant,
v.
DEAN FOODS COMPANY, Defendant-Appellee.
 No. 91-6259.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1992.
 
 Before JONES and GUY, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Local Union No. 783 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 783"), appeals the district court's order in favor of defendant, Dean Foods Company ("Dean Foods"), dismissing Local 783's claim for breach of a collective bargaining agreement. For the reasons that follow, we affirm.
 
 
 2
 * Local 783 is the certified bargaining representative for employees at the Louisville, Kentucky facility of Dean Foods, a dairy food processor. Both parties are signatories to the Master Dairy Agreement ("MDA"), a collective bargaining agreement negotiated between the Central Conference of Teamsters and various employers. The MDA contemplates that each employer, in conjunction with the corresponding representative local union, will execute a local addendum supplementing the MDA.
 
 
 3
 Local 783 and Dean Foods met in the spring of 1990 to negotiate a new local addendum after the previous local addendum expired. When these negotiations deadlocked in June of 1990, the parties agreed, pursuant to article seven of the MDA, to submit the dispute to arbitration before a six-member Joint Area Committee ("JAC"). A JAC convened on July 11, 1990, but postponed resolution of the local-addendum issue until a later date.[1]
 
 
 4
 On September 5, 1990, the JAC reconvened. Although section 7.8 of the MDA requires that the JAC "shall consist of three persons chosen by the Employer involved and three persons chosen by the Union," J.A. at 65-66, one employer representative and one union representative were absent from the meeting, leaving the JAC with only four members. In addition, Local 783 contends that both employer representatives on the panel were Dean Foods personnel directly involved in the controversy, thus contravening the MDA's requirement that only a single employer representative directly involved in the dispute participate in the JAC.
 
 
 5
 Notwithstanding objections to the composition of the panel raised by Jerry Vincent, Secretary-Treasurer of the Union, the JAC proceeded to hear the merits of the dispute and, on September 5, rendered a unanimous decision implementing the local addendum offered by Dean Foods. Local 783 refused to ratify the local addendum, however, and three months later asked that Dean Foods negotiate a new local addendum. Dean Foods refused.
 
 
 6
 On January 31, 1991, Local 783 filed the present action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988), seeking to vacate the JAC's arbitration award. The complaint also requested declaratory relief pursuant to 28 U.S.C. § 2201 (1988). On April 18, 1991, Dean Foods filed a Motion to Dismiss or, Alternatively, for Summary Judgment. On July 12, 1991, the district court dismissed the complaint on the ground that Local 783 had failed to exhaust available contractual remedies. Local 783 subsequently filed a Motion to Reconsider or Alter or Amend the Judgment, to which Dean Foods responded. The court denied Local 783's motion on September 27, 1991. This timely appeal followed.
 
 II
 
 7
 In dismissing Local 783's complaint, the district court noted that the MDA, the collective bargaining agreement in this case, mandates that disputes or disagreements "arising out of the interpretation of this Agreement," J.A. at 63, be resolved by a JAC. The court reasoned from this language that "[t]he plaintiff was bound by contract to arbitrate the issue of whether the composition of the Joint Area Committee was improper or whether the ensuing decision of the Joint Area Committee was void." Id. at 125. Because Local 783 did not submit the issue of the JAC's composition to arbitration, the court concluded that Local 783 had failed to exhaust its available contractual remedies. On appeal, Local 783 insists that the validity of the JAC's composition should be resolved by the courts rather than through arbitration.
 
 
 8
 It is well established that whether a party to a collective bargaining agreement is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the courts on the basis of the contract entered into by the parties. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964). As explained by the Supreme Court,
 
 
 9
 [t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.
 
 
 10
 Id. at 547; accord United Indus. Workers v. Kroger Co., 900 F.2d 944, 948 (6th Cir.1990). Thus, Local 783 is undoubtedly correct that the issue of whether the present dispute falls within the scope of the MDA's arbitrability provisions is subject to judicial determination.
 
 
 11
 Case law is equally well settled, however, that where the language of the collective bargaining agreement is ambiguous, all doubts concerning the scope of arbitrability should be resolved in favor of arbitration. McGinnis v. E.F. Hutton & Co., 812 F.2d 1011, 1013 (6th Cir.), cert. denied, 484 U.S. 824 (1987).
 
 
 12
 An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute....
 
 
 13
 ....
 
 
 14
 ... In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail....
 
 
 15
 United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 584-85 (1960). This presumption of arbitrability is particularly appropriate where, as here, "the arbitration clause provides for arbitration of any controversies regarding interpretation of the contract." CWA v. Michigan Bell Telephone Co., 820 F.2d 189, 193 (6th Cir.1987). Because the interpretation of an arbitration agreement is one of law, our review of that issue is de novo. See McGinnis, 812 F.2d at 1012.
 
 
 16
 In the instant case, the district court correctly examined the text of the MDA to determine whether the parties' dispute was subject to arbitration. Section 7.6 of the MDA provides, in pertinent part, that disputes arising under section 7.1(a) shall be resolved by resort to a JAC. Section 7.1(a), in turn, is a broadly worded clause covering any "[d]isputes or grievances arising out of the interpretation of this Agreement." J.A. at 63. Local 783 challenges only whether the JAC at the September 5 proceedings conformed to the dictates of section 7.8 of the MDA, which sets forth the compositional requirements of JACs. Because this challenge turns on the proper interpretation of the MDA, we conclude that the dispute falls within the scope of the arbitration clause of section 7.1(a). See CWA, 820 F.2d at 193. Accordingly, we conclude that the district court correctly dismissed the complaint for Local 783's failure to exhaust its contractual remedies.
 
 
 17
 The above analysis views Local 783's challenge to the composition of the JAC as distinct from the underlying dispute out of which the present claim arose. While this characterization finds support in this circuit's precedent, see, e.g., General Drivers, Local Union 89 v. Moog Louisville Warehouse, 852 F.2d 871, 874 (6th Cir.1988) (treating arbitrability of dispute over timeliness of employee's grievance as distinct from grievance itself), we note that Local 783's claim would be no more compelling if we were to view it as a procedural claim appended to the original substantive dispute over the local addendum. In John Wiley, the Supreme Court held that, because procedural claims are generally inseparable from the merits of the underlying substantive dispute, they should normally be resolved through arbitration where the substantive dispute itself is also subject to arbitration. John Wiley, 376 U.S. at 557; see also Kroger, 900 F.2d at 947 ("Procedural questions of whether steps of a grievance procedure have been followed are generally left to the arbitrator."). Because Local 783 concedes that the original dispute over the local addendum was properly subject to arbitration, to the extent the present dispute arises out of an objection to the procedures employed in the resolution of that dispute, it is also properly the subject of arbitration.
 
 
 18
 Although Local 783 directs this Court to a number of cases that allegedly support its position, each is distinguishable. In Kroger, for instance, this court held that a union would not be bound by the decision of an arbitrator acting pursuant to a collective bargaining agreement to which the union was not a party, and which contravened the union's own agreement with the employer. Kroger, 900 F.2d at 948. Here, by contrast, Local 783 does not dispute that it was bound by the MDA, which in turn clearly sets forth that disputes over the interpretation of the MDA be resolved through arbitration.[2]
 
 
 19
 Similarly, in Avis Rent A Car System v. Garage Employees Union, Local 272, 791 F.2d 22 (2d Cir.1986), the court refused to enforce an arbitrator's award where the arbitrator determined that the collective bargaining agreement under which he had been selected did not apply, and proceeded to act pursuant to a different agreement under which he had no authority to act. Id. at 25-26. Here, of course, the JAC acted pursuant to the authority vested in it by the MDA; whether the composition of the JAC failed to satisfy the requirements of the MDA clearly turns on an interpretation of that agreement. Thus, Local 783's present claim falls within the scope of the MDA's arbitration clause.
 
 
 20
 As a final matter, Local 783 suggests that permitting a second arbitration panel to rule on the validity of the prior panel would be impermissible. The Supreme Court, however, rejected this argument in W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Workers, 461 U.S. 757 (1983). In W.R. Grace, a second arbitrator, Barrett, refused to follow the decision of a prior arbitrator, Sabella, despite language in the collective bargaining agreement directing the second arbitrator to do so. Id. at 765. Barrett based his decision on his determination that Sabella had exceeded the scope of his authority in rendering his decision. Id. at 763. In upholding Barrett's decision, the Supreme Court reasoned as follows:
 
 
 21
 Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator. Barrett's conclusions that Sabella acted outside his jurisdiction and that this deprived the Sabella award of precedential force under the contract draw their "essence" from the provisions of the collective-bargaining agreement. Regardless of what our view might be of the correctness of Barrett's contractual interpretation, the Company and the Union bargained for that interpretation. A federal court may not second-guess it.
 
 
 22
 Id. at 765. Thus, the mere possibility that a second JAC might have invalidated the decision of the September 5 JAC does not remove Local 783's present claim from the scope of the MDA's arbitration clause.
 
 III
 
 23
 In the proceedings below, Dean Foods argued strenuously that, even if Local 783 did not fail to exhaust its contractual remedies, its claim should properly be viewed as an action to vacate the September 5 arbitration award and, as such, should be dismissed as untimely. Although the district court did not rely on this ground, we are inclined to agree that this provides an alternate basis for affirmance.
 
 
 24
 Congress did not prescribe a limitations period for actions brought pursuant to section 301 of the LMRA. In UAW v. Hoosier Cardinal Corp., 383 U.S. 696 (1966), the Supreme Court held that "the timeliness of a § 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." Id. at 704-05. In United Parcel Service v. Mitchell, 451 U.S. 56 (1981), the Court held that, where an employee's section 301 claim is, in effect, an action to vacate an arbitration award, a court should look to analogous state law to determine the proper statute of limitations. Id. at 60-62.
 
 
 25
 More recently, however, in Occidental Chemical Corp. v. International Chemical Workers Union, 853 F.2d 1310 (6th Cir.1988), this court, relying on the Supreme Court's decisions in DelCostello v. Teamsters, 462 U.S. 151 (1983), and United Paperworkers International Union v. Misco, 484 U.S. 29 (1987), held that, where state law does not provide an analogous cause of action, the court should adopt the three-month limitations period found in section 12 of the United States Arbitration Act ("USAA"). Occidental Chemical, 853 F.2d at 1315-16 (citing 9 U.S.C. § 12 (1988)). The court first looked to Michigan law and determined that the most closely analogous Michigan arbitration statute expressly excluded labor contracts from its scope. Id. at 1315.[3] The court further determined that no other Michigan statute provided a ready analogy. Id. Accordingly, the court adopted the three-month limitations period of section 12 of the USAA. Id. at 1316; accord Bacashihua v. United States Postal Serv., 859 F.2d 402, 406 (6th Cir.1988).
 
 
 26
 Applying Occidental Chemical to the case at bar, we would be inclined to hold that Kentucky law does not provide an analogous cause of action. Kentucky's Uniform Arbitration Act, much like the statute considered in Occidental Chemical, expressly excludes "arbitration agreements between employers and employees or between their respective representatives" from its parameters. Ky.Rev.Stat.Ann. § 417.050 (Baldwin 1991). In addition, Local 783 does not refer this Court to any other Kentucky statute analogous to section 301 that would provide a limitations period. Accordingly, we believe that the three-month limitations period applies to challenges to vacate an arbitration award in Kentucky.
 
 
 27
 In the instant case, Local 783 objects to the award of the JAC handed down on September 5, 1990. Local 783 filed its complaint in district court on January 31, 1991. Therefore, its complaint, if construed as an action to vacate the JAC's award, would be considered untimely.
 
 IV
 
 28
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The parties disagree over the reason for the postponement. Dean Foods contends that the issue was postponed in order to give a competitor, Southeastern Dairies, opportunity to testify regarding alleged wage disparity, while Local 783 contends that no reason was given for the delay. For the reasons set forth infra, we find resolution of this factual dispute irrelevant to the disposition of this case
 
 
 [2]
 Likewise, in Moog Louisville Warehouse, this court interpreted the collective bargaining agreement to conclude that the agreement explicitly excluded the dispute at issue from the scope of arbitration. 852 F.2d at 873-875. Because we conclude that the arbitration clause in this case covers the present claim, Moog provides no support for Local 783's position
 
 
 [3]
 Specifically, the court noted that, under state law, Michigan's arbitration statutes " 'shall not apply to collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment.' " Id. at 1313 (quoting Mich.Comp.Law Ann. § 600.5001(3))