ABRAHAM & STRAUS, INC., Plaintiff,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 30, AFL–CIO ("Local 30"); Joseph P. Ferguson, individually and as President of Local 30; Michael J. Hach, individually and as Business Manager of Local 30; Liam Treacy, individually and as Treasurer of Local 30; John T. Ahern, individually and as Business Representative of Local 30; and all others in active concert or participation with them, Defendants.

No. 92 CV 4902.

United States District Court, E.D. New York.

Nov. 6, 1992.

---

Peter Conrad, Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiff.

Mark Soroka, Law Offices of Adam Ira Klein, P.C., New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Abraham & Straus ("A & S") has moved this Court for a preliminary injunction ordering the defendants and all those in active concert with them to refrain from picketing or engaging in any other job action over the issue of staffing of engineers and mechanics at A & S' new store in Roosevelt Field, New York, on the ground that the conduct violates the terms of the parties' collective bargaining agreement. A & S' claim arises under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).

*Background*

Local 30 and A & S are parties to a three-year collective bargaining agreement that covers engineers and maintenance mechanics in A & S stores in Manhattan, Hempstead, Sunrise, Huntington, Manhasset, Smith Haven, Queens Center, Carle Place, and Valley Stream. In 1991, the parties amended the agreement to provide for the opening of new stores:

> If it is established that the Union represents all Maintenance employees in a new store opened by the Company:
>
> a) A minimum of one (1) Engineer will be assigned to the store if it contains un-

der 200,000 square feet of selling space, and

b) A minimum of two (2) Engineers will be assigned to the store if it contains 200,000 square feet, or greater, of selling space.

(Letter of Understanding, Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction, Exhib. A). In addition, the collective bargaining agreement contains a broad no-strike clause that prohibits all strikes, work stoppages, and picketing during the term of the agreement[1] and an arbitration clause that mandates arbitration as the exclusive means of resolving any dispute arising between A & S and the union in connection with the agreement.[2]

On September 23, 1992, Local 30 Business Representative John Ahern proposed that A & S employ engineers represented by Local 30 at a new A & S store in Roosevelt Field, scheduled to open for business on October 10, 1992. In a September 30, 1992, meeting, Ahern repeated the proposal, threatening A & S with a job action unless it agreed to transfer engineers from the soon-to-be closed Hempstead store to Roosevelt Field. It is defendants' uncontested contention that, during the course of this meeting, A & S agreed to recognize Local 30 at the Roosevelt Field store, but would only assign one engineer to the location. (Defendants' Opposition to Plaintiff's Application, Aff. of John T. Ahern at ¶ 8).

At its conclusion, Ahern presented A & S Operating Vice President of Human Resources Harold Salisbury with a letter dated September 29, 1992, stating the union's belief that the collective bargaining agreement governed the staffing issue and reiterating the union's willingness to take direct action: "Local 30 will take whatever actions necessary to protect our jurisdiction, including a picket line and strike." (Plaintiff's Application, Exhib. B).

The following day, A & S advised the union by letter that any strike over staffing would be illegal and that if Local 30 believed that A & S had incorrectly interpreted the agreement, it should invoke arbitration. (Plaintiff's Application, Exhib. C). On October 2, 1992, the union presented A & S with a Notice of Intention to Arbitrate the staffing issue, noting that it believed that the refusal to staff engineers constituted a violation of the collective bargaining agreement. (Plaintiff's Application, Exhib. D).

On October 12, 1992, Local 30 began picketing at the Roosevelt Field location. (Plaintiff's Application, Aff. of Harold Salisbury at ¶¶ 13–15). Picket lines were established at the employee and customer entrances and at a third entrance located inside the shopping mall. Unwilling to cross the picket lines, construction contractors who were working to ready the store for its grand opening engaged in a day-

---

1. The no-strike clause is set forth in Article 6 of the collective bargaining agreement and provides as follows:

   The Union and the employees agree that they will not call, participate in or sanction any strike (general, sympathetic or any other kind), walkout, *picketing,* stoppage of work, retarding of work or boycott (primary or secondary), or *any other interference with the operation and conduct of the Employer's business;* the employees further agree that they will not stay away from work during the term of this Agreement. The Employer agrees that there will be no lockouts during the term of this Agreement as long as this Agreement is lived up to by both parties. The foregoing provisions shall apply pending a decision by the arbitrator in any case involving a dispute pursuant to the arbitration clause of this Agreement.

·(Plaintiff's Application, Exhib. A) (emphasis added).

2. The mandatory arbitration procedure is set forth in Article 12 of the agreement:

   If any dispute shall arise between the Union and the Employer in connection with this Agreement or the breach thereof, the Union and the Employer shall make an earnest effort to settle any such dispute between them. If they fail to reach a mutually satisfactory adjustment of such dispute, either party may petition the New York State Board of Mediation for the selection of an arbitrator in accordance with the rules of such Board of Mediation. Each arbitration under this Agreement shall be conducted in accordance with such rules and the decision of such arbitrator with respect to such dispute shall be binding upon the Employer and the Union.

(Plaintiff's Application, Exhib. A).

long work stoppage.[3] (Tr. at 45–46). The picketing continued for the next three days, whereupon A & S offered to proceed to expedited arbitration in exchange for a cessation of picketing. (Plaintiff's Application, Exhib. F). Local 30 never responded to the offer and continued picketing, at one point even disrupting a children's talent show staged by A & S in celebration of the store's grand opening. (Salisbury Aff. at ¶ 18).

On October 16, 1992, pursuant to an application by A & S, Judge John Bartels issued a temporary restraining order, enjoining the defendants from picketing or engaging in any other interference with the operations of A & S over any dispute that would be arbitrable under the collective bargaining agreement. On October 19, 1992, this Court held a hearing on the issue of a preliminary injunction.

*Preliminary Injunction*

Notwithstanding the Norris–LaGuardia Act's general policy of judicial nonintervention in labor disputes, the Supreme Court has held that Section 301 of the Labor Management Relations Act empowers a federal district court to enjoin a strike over a dispute subject to arbitration under the terms of a collective bargaining agreement. *See Boys Markets, Inc. Retail Clerks Union, Local 770*, 398 U.S. 235, 253, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970); *see also Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 407, 96 S.Ct. 3141, 3147, 49 L.Ed.2d 1022 (1976) (allowing unions to strike over arbitrable disputes "would interfere with and frustrate the arbitral processes by which the parties had chosen to settle a dispute").

■ Four conditions must be met before *Boys Markets* relief may be granted: (1) There must be a collective bargaining agreement in effect between the parties; (2) the job action or threatened job action violates a no-strike provision in the agreement; (3) the job action or threatened job action arises out of a grievance the parties are contractually bound to arbitrate; and (4) injunctive relief is warranted under ordinary principles of equity. *Id.* 398 U.S. at 253–55, 90 S.Ct. at 1594–95.

The defendants oppose the granting of *Boys Markets* relief on two grounds. First, they contend that the dispute is not arbitrable because there is no recognition of Local 30 at Roosevelt Field and therefore no collective bargaining agreement in effect between the parties at that location. The defendants further argue that, even if the dispute is deemed arbitrable, *Boys Markets* relief is not available because the parties to be enjoined have engaged only in picketing unaccompanied by any work stoppages.

## A. *Arbitrability of the Dispute*

Defendants contend that their dispute with A & S is one of recognition and representation at the new Roosevelt Field store and, as such, does not fall within the scope of the mandatory arbitration provisions of the parties' collective bargaining agreement.

■ Recognitional disputes can be the proper subject of an arbitration proceeding pursuant to Section 301. The National Labor Relations Act vests primary jurisdiction in the National Labor Relations Board ("NLRB") over issues of representation. *See Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *Local Union 204 of the Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 417 (8th Cir.1982). Thus, where the dispute is purely representational in nature, the NLRB has exclusive authority to decide the case and any jurisdiction of the district court pursuant to Section 301 is precluded. Where the representational claim concerns a dispute that could also arguably be characterized as contractual, however, the Supreme Court has ruled that a district court may hear the case pursuant to Section 301. *See Carey*, 375 U.S. at 268, 84 S.Ct. at 407; *see also United Indus. Workers v. Kroger*

---

**3.** Following the construction workers' work stoppage, A & S set up a "reserved gate" which was for the exclusive use of the contractors and which was not to be picketed by Local 30. (Tr. at 47). The contractors returned to work on October 13, 1992, without incident.

*Co.*, 900 F.2d 944, 946 (6th Cir.1990); *United Bhd. of Carpenters & Joiners v. W.T. Galliher & Bros.*, 787 F.2d 953, 954 (4th Cir.1986). The district court's concurrent authority over such a dispute is not only proper, the Court noted, but may even have a "pervasive, curative effect":

> By allowing the dispute to go to arbitration its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace" and which may be dispositive of the entire dispute, are encouraged. The superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated .and troubled area.

*Carey*, 375 U.S. at 272, 84 S.Ct. at 409 (citation omitted); *see also United Indus. Workers*, 900 F.2d at 946 (ordering arbitration of a representational dispute); *United Bhd. of Carpenters & Joiners*, 787 F.2d at 954 (same).

Courts have long recognized a presumption in favor of arbitrability where there is a broad arbitration clause in the collective bargaining agreement. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Indeed, only evidence of purposeful exclusion of a particular issue from the agreement can overcome this presumption. *See id.* at 582–83, 80 S.Ct. at 1353 ("[i]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail"); *see also United Optical Workers Union, Local 408 v. Sterling Optical Co.*, 500 F.2d 220, 224 (2d Cir.1974).

■ Here, the collective bargaining agreement contains an expansive provision mandating arbitration of "any dispute [ ] aris[ing] between the Union and the Employer in connection with this Agreement." (Plaintiff's Application, Exhib. A). It does not specifically exempt disputes over staff-

ing. In fact, although the agreement does not specifically provide for the Roosevelt Field store, its provisions regarding the staffing of engineers at new stores makes clear that the parties contemplated circumstances such as this and intended that the agreement control.[4] Furthermore, the union's demand that the store be staffed with engineers from the Hempstead store—a store expressly covered by the agreement—calls for the interpretation of the agreement's provisions on termination and transfer. Arbitration is wholly appropriate where, as here, resolution of the dispute depends upon the analysis and construction of the collective bargaining agreement.

■ Moreover, the union's own actions belie its contention that the dispute with A & S is purely—or even predominantly—recognitional. Local 30 repeatedly demanded that A & S employ its member engineers at the Roosevelt Field store, threatening a job action unless A & S agreed to transfer engineers from the soon-to-be-closed Hempstead store. Even more revealing, however, is Local 30's October 2, 1992, Notice of Intention to Arbitrate:

> Failure and refusal to provide engineering staff as agreed at the newly opened Westbury Abraham & Straus Store in violation of the Agreement.

(Plaintiff's Application, Exhib. D). These actions clearly demonstrate Local 30's belief that A & S accepted the union's representation of engineers at the new store and that the Long Island stores' collective bargaining agreement was to govern this relationship.

The union maintains that A & S's recognition of Local 30 was subsequently withdrawn, but the record demonstrates that it never altered its position that the collective bargaining agreement governs the staffing of engineers at the Roosevelt Field store. A & S' repeated warnings that strikes and picketing are illegal under the agreement

---

4. In unguarded moments, both Local 30 Business Representative John Ahern and A & S Operating Vice President Harold Salisbury have affirmed their principals' understanding and agreement that the collective bargaining agreement covers "Long Island store(s)." *See* Letter from H. Salisbury to J. Ahern, dated Oct. 15, 1992, Plaintiff's Application, Exhib. F; Memorandum of Agreement, dated Sept. 8, 1989, Defendant's Opposition, Exhib. 2.

makes clear that A & S recognized Local 30 at the Roosevelt Field store and intended that the agreement apply to that store. (Plaintiff's Application, Exhibs. C, F).

Close examination of A & S' correspondence to the union also reveals that the company remained open to discussion on the issue of staffing throughout the dispute. Following A & S' verbal assurances of recognition on September 30, 1992, A & S sent the union an undated letter, stating that the company "would be willing to discuss the possibility of one Engineer being assigned there." (Plaintiff's Application, Exhib. C). A & S also offered to proceed to expedited arbitration on the dispute in exchange for an immediate cessation of picketing. (Plaintiff's Application, Exhib. F).

Local 30's own actions contradict its contention that it only resorted to picketing once A & S withdrew recognition of the union at the Roosevelt Field store. Ahern's September 29, 1992, letter to Operating Vice President Harold Salisbury, advising that the union would "take whatever actions necessary to protect our jurisdiction, including a picket line and strike," is particularly telling. (Plaintiff's Application, Exhib. B). This letter makes plain the fact that Local 30 had always intended to resort to direct action, even at the point in time when it considered its dispute to be governed by the collective bargaining agreement and its broad no-strike and arbitration provisions. For Local 30 to now claim that its change in tactics from filing a Notice of Intention to Arbitrate to picketing a mere ten days later was precipitated by A & S' sudden refusal to recognize the union is disingenuous at best. Both Ahern's letter and the Notice of Intention to Arbitrate accused A & S of refusing to recognize Local 30 at the Roosevelt Field store, but the union nevertheless sought to proceed to arbitration. From the foregoing facts, it is apparent that Local 30 picketed to enforce its contractual claim to two engineers, not to win recognition.

Finally, it is significant to note that defendant union has not filed a claim under 29 U.S.C. § 159 to appear before the NLRB for certification proceedings, even though that would normally be a union's first step in the process of winning recognition where the employer has refused to do so on its own.

### B. Availability of the Boys Markets Injunction

The defendants also maintain that a *Boys Markets* injunction may not enjoin picketing alone. Defendants read *Boys Markets* too narrowly, however. Although *Boys Markets* did not specifically address the enjoinability of picketing under Section 301, the Supreme Court in that case repeatedly underscored the importance of enforcing the bargain the parties wrought:

> Indeed, the very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lockouts, or *other self-help measures*. This basic purpose is obviously largely undercut if there is no immediate, effective remedy for those very tactics that arbitration is designed to obviate.

*Boys Markets*, 398 U.S. at 249, 90 S.Ct. at 1591 (emphasis added). Thus, this Court's failure to enforce the collective bargaining agreement between A & S and Local 30 by allowing the union to picket would clearly eliminate any incentive for A & S to agree to go to arbitration and thereby undercut Congress' goal of fostering the peaceful resolution of industrial disputes. *See id.* at 248, 90 S.Ct. at 1591.

"[T]he central purpose of the Norris–LaGuardia Act to foster the growth and viability of labor organizations is hardly retarded ... by a remedial device that merely enforces the obligation that the parties freely undertook." *Id.* at 252–53, 90 S.Ct. at 1593. Thus, it is not the character of the self-help measure employed by Local 30, but rather, the fact that it freely agreed to forego its arsenal of economic pressure tactics in exchange for the right to arbitrate. Whether the activity is striking or picketing, the right to concerted action over a particular grievance was bargained away in favor of a more peaceful mode of resolution. Moreover, defendant's attempt to limit the *Boys Markets* holding is not sup-

ported by the statute upon which the Supreme Court decision is based. Section 501 of the Labor Management Relations Act defines the term "strike" as "any concerted slowdown or *other concerted interruption of operations* by employees." 29 U.S.C. § 142 (1988) (emphasis added).

In any event, this Court need not go so far in its analysis for, contrary to defendants' assertions, this case does involve more than mere picketing. As testimony at the preliminary injunction hearing clearly established, picketing by Local 30 at the Roosevelt Field store precipitated a daylong work stoppage by approximately fifty construction contractors hired to prepare the store for its grand opening. (Tr. at 45–46).

Courts have not hesitated to enjoin a broad range of activity, including picketing, where that activity is accompanied by a work stoppage or other tangible interruption of business operations in violation of an agreement not to strike. *See, e.g., Dannon Co. v. Whelan*, 555 F.Supp. 361 (S.D.N.Y.1983) (in response to strike over transfer of operations, court enjoined strikes, slowdowns, and other interruptions of plaintiff's operations, including picketing for the purpose of instigating a work stoppage); *New York News, Inc. v. New York Typographical Union, Local 6*, 374 F.Supp. 121 (S.D.N.Y.1974) (issuing broad injunction prohibiting typographers' union from engaging in any strike, work stoppage, or any other interference with normal employment or production). Courts have also granted *Boys Markets* relief to forestall a threatened strike, even though no work slowdown or stoppage has taken place. *See, e.g., Greater N.Y. Health Care Facilities Ass'n, Inc. v. Ottley*, 493 F.Supp. 612 (S.D.N.Y.1980) (enjoining threatened strike by nursing home workers).

*Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council*, 829 F.2d 430 (3d Cir.1987), *cert. denied*, 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988), provides ample support for this Court's decision to enjoin picketing by Local 30. *Catalytic* involved a jurisdictional dispute over crane operations at a New Jersey nuclear plant. Local 825 objected to the plant owner's use of its own employees to man the mobile cranes and began picketing at the plant site. As a result, a number of other craft unions at the plant engaged in a work stoppage. One month later, Local 825 began handing out leaflets at the plant's entrances.

On application of the general contractor Catalytic, the district court granted a permanent injunction directing the parties to arbitrate the dispute pursuant to their collective bargaining agreement with the plant owner, Jersey Central. Local 825 was prohibited from picketing, handbilling, and otherwise interfering with the ingress and egress of workers at the plant site.

On appeal, Local 825 contended that *Boys Markets* did not govern its activity because none of its members had engaged in a strike or work stoppage. The Third Circuit rejected the union's argument, noting

... the union reads that case too narrowly. In amplifying the desirability of arbitration, the [Supreme] Court observed such procedures would discourage "strikes, lock outs, or other self-help measures" for which there must be an "immediate, effective remedy."

In the case at hand, the handbilling at the plant gate constituted self-help, triggering a work stoppage just as effectively as the picketing some weeks earlier. The measure was designed to bring pressure on Catalytic in precisely the same manner as a strike and, consequently, came within the *Boys Markets* rationale. *Id.* at 434 (citations omitted).

Like the union in *Catalytic*, Local 30 intended that its picketing exert pressure on A & S to employ its members at the Roosevelt Field store. Although its conduct did not rise to the level of a strike, its ability to incite the construction workers' sympathy strike had precisely the same effect as a strike by its own members. In fact, Local 30 went even further than its counterparts in *Catalytic*, threatening to strike over the staffing issue itself. To deprive A & S of an effective remedy under such circumstances would unfairly allow Local 30 to shirk its obligation to arbitrate

pursuant to agreement it bargained for at arms-length and in good faith. *See id.* at 433; *see also Campbell "66" Express, Inc. v. Rundel,* 597 F.2d 125, 129 n. 7 (8th Cir.1979) (notwithstanding collective bargaining agreement's failure to specifically bar picketing in its no-strike clause, picketing enjoined because "appellants attempted to circumvent the binding grievance procedure by picketing the company").

As the foregoing discussion makes clear, the requirements for relief under *Boys Markets* have been satisfied. There is a collective bargaining agreement in effect between A & S and Local 30 and Local 30's picketing and threats to strike violate the agreement's no-strike provision. Moreover, the union's activity arises out of a dispute over staffing in a new A & S store—an issue the parties' are contractually bound to arbitrate. Finally, injunctive relief is warranted in this case because A & S has and will continue to suffer irreparable injury to its business and goodwill. Local 30, on the other hand, will not suffer injury because the application for injunctive relief will merely enforce the bargain into which the union freely entered.

Plaintiff's request for a preliminary injunction is hereby granted and the parties are directed to proceed to arbitration to resolve the issue of staffing of engineers and mechanics at A & S' Roosevelt Field store.

SO ORDERED.